Joseph R. CLOUTIER and Mary F. Cloutier, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. TH 80–59–C.

United States District Court, S. D. Indiana, Terre Haute Division.

May 28, 1982.

Wayne E. Gresham and Donald G. Sutherland, Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for plaintiffs.

Charles Goodloe, Asst. U.S. Atty., Indianapolis, Ind., John S. Miles, Trial Atty., Tax Dept., Dept. of Justice, Washington, D.C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BROOKS, District Judge.

This matter is before the Court on the Cross-Motions of the parties for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The Court, having reviewed such Motions, the Briefs in Support thereof, and the Stipulation of Facts, and being duly advised in the premises, now makes the following Findings of Facts and Conclusions of Law.

## FINDINGS OF FACT

1. This is an action for refund of Internal Revenue taxes and interest assessed against and collected from the plaintiffs, Joseph R. and Mary F. Cloutier, for the taxable year 1973, which arises under 26 U.S.C. § 7422. Jurisdiction of this Court is founded upon the provisions of 28 U.S.C. § 1346(a)(1).

2. Joseph R. Cloutier (hereinafter referred to as "Joseph") and Mary F. Cloutier (hereinafter referred to as "Mary"), are now, and at all times relevant hereto, were husband and wife.

3. Joseph and Mary are now and at all times relevant hereto were residents of the State of Indiana, their residence being located at 66 Long Ridge Road, Terre Haute, Indiana.

4. In October, 1966, for Eleven Thousand Five Hundred Dollars ($11,500.00), Joseph acquired twenty-three per cent (23%) of the stock of Indiana Cable Television, Inc., (hereinafter referred to as "Indiana Cable"), which in that same year commenced operation of a cable television system at Terre Haute, Indiana.

5. On June 24, 1970, the Federal Communications Commission (hereinafter referred to as the "F.C.C."), adopted and promulgated regulations (hereinafter referred

to as the "F.C.C. Regulations"), regulating common control of a television broadcast station and a cable television broadcast system in the same community and establishing certain deadlines for divestiture of any such prohibited control. (See Exhibit 1, F.C.C. Regulations. All references to exhibits in this Statement of Facts are attached to the parties' Stipulation of Facts.)

6. At the date of the issuance of the F.C.C. Regulations, Joseph owned fourteen percent (14%) of the issued and outstanding stock of Wabash Valley Broadcasting Corporation (hereinafter referred to as "Wabash Valley"), and was the Executive Vice-President, Treasurer, and a member of the board of directors of such corporation. Wabash Valley held a license from the F.C.C. and owned and operated a television broadcast station in Terre Haute, Indiana.

7. At the date of the issuance of the F.C.C. Regulations, Anton Hulman, Jr. (hereinafter referred to as "Hulman") owned eighty percent (80%) of the issued and outstanding stock of Wabash Valley and was the President and member of the board of directors of such corporation.

8. At the date of the issuance of the F.C.C. Regulations, Joseph owned twenty-three percent (23%) of the issued and outstanding stock of Indiana Cable and was the Vice President and a member of the board of directors of such corporation.

9. At the date of the issuance of the F.C.C. Regulations, Hulman, as Trustee of the Grace Hulman Descendants Trust (hereinafter referred to as "Trust"), owned twenty-three percent (23%) of the issued and outstanding stock of Indiana Cable. (Hereinafter, Hulman in his capacity as Trustee of the Trust is referred to as "Trustee.") Hulman, in his individual capacity and not as Trustee of the Trust, was the President and a member of the board of directors of Indiana Cable.

10. On or about May 31, 1973, Joseph and the Trustee petitioned the F.C.C. for a waiver of the F.C.C. Regulations insofar as such regulations required divestiture of their respective minority ownership interests in Indiana Cable. (See Exhibit 2, copy of petition).

**14**

11. On or about August 31, 1973, the United States Department of Justice filed with the F.C.C. an "Opposition of Department of Justice to Petition for Waiver of Section 76.501 of the Commission's Rules." (See Exhibit 3, copy of said "Opposition").

12. On November 9, 1973, Joseph sold all of his shares of stock of Indiana Cable to ATC Cable Inc., a wholly-owned subsidiary of American Television and Communications Corporation, for Four Hundred Ninety-eight Thousand One Hundred Fifty-one Dollars and Twenty-five Cents ($498,-151.25), an amount substantially in excess of Joseph's cost basis of Eleven Thousand Five Hundred Dollars ($11,500.00) in such stock. (See Exhibit 4, copy of letter dated October 31, 1973).

13. Joseph employed the Washington, D.C. law firm of Ivins, Phillips & Barker which prepared and filed an appropriate request for ruling from the National Office of the Internal Revenue Service, dated December 4, 1973, concerning Sections 1071 and 1033 of the Internal Revenue Code of 1954 ("Code"). (See Exhibit 5, Copy of request dated December 4, 1973).

14. In response to such request, a ruling was issued by the Internal Revenue Service on March 28, 1974. (See Exhibit 6). The ruling reads in part as follows:

> Provided that Trust and Joseph [Cloutier] comply with the other requirements of sections 1033 and 1071 of the Code, and provided that the F.C.C. issues the appropriate certification under section 1071, then subject to the provisions of sections 1245(b)(5) and 1250(d)(5), gain on the sale of stock in [Indiana] Cable shall be recognized only to the extent that the amount realized upon the conversion exceeds the cost of qualified replacement property under section 1033(a)(3)(A).

15. Joseph and Mary timely filed an annual joint income tax return (Form 1040) for the year 1973 on or before April 15, 1974. (See Exhibit 7). The return did not report the gain on Joseph's sale of his Indiana Cable stock, and did not include a statement of "election" nor any other reference therein to the sale of the Indiana Cable stock. At all pertinent times, Joseph and Mary were on the cash receipts and disbursements method of accounting, and their taxable year coincided with the calendar year.

16. On April 29, 1974, Joseph and the Trustee petitioned the F.C.C. to issue a tax certificate pursuant to Code Section 1071, and on May 22, 1974, the F.C.C. granted such petition. (See Exhibit 8, Opinion and Order).

17. On May 31, 1974, the F.C.C. issued its tax certificate regarding Joseph's sale of Indiana Cable stock. (The F.C.C. tax certificate states that Joseph's sale of his stock of Indiana Cable was necessary or appropriate to effectuate the F.C.C.'s new rules and policies prohibiting the cross-ownership, operation, control, or interest of a cable television system with a television broadcast station whose predicted Grade B contour overlaps in whole or in part the service area of such system. See Exhibit 9, tax certificate).

18. On July 31, 1974, Joseph purchased Two Thousand Fifty-eight (2,058) shares of the common stock of Wabash Valley for the sum of Five Hundred Thousand Ninety-eight Dollars ($500,098.00). (See Exhibit 10, Corporate Minutes).

19. On or about January 13, 1975, Joseph and Mary timely filed an amended income tax return for the taxable year 1973. The amended return included a statement of "election" whereby Joseph specifically elected to treat the sale of his Indiana Cable stock as an involuntary conversion pursuant to Code Sections 1071 and 1033. (See Exhibit 11, Amended Return).

20. The Internal Revenue Service audited Joseph's and Mary's 1973 income tax return and proposed some adjustments, including an increase in their taxable income for 1973 on the basis of the capital gain realized from the sale of Joseph's Indiana Cable stock. The parties were unable to agree on the matter, and the Internal Revenue Service issued a Notice of Deficiency, dated November 8, 1976. (See Notice of Deficiency attached to the Complaint as

Exhibit "F".) Thereafter, a deficiency for the year 1973 in the amount of One Hundred Sixty-two Thousand Six Hundred Six Dollars and Thirty-three Cents ($162,606.33), plus interest of Thirty-three Thousand Forty-six Dollars and Ninety-six Cents ($33,046.96), was assessed against Joseph and Mary by the Internal Revenue Service.

21. By check dated March 14, 1977, Joseph and Mary paid the additional assessment of tax and interest in the total amount of One Hundred Ninety-five Thousand Six Hundred Fifty-three Dollars and Twenty-nine Cents ($195,653.29) (See Exhibit "G" attached to the Complaint).

22. On or about March 12, 1979, Joseph and Mary timely filed a Claim for Refund for the year 1973 with the Internal Revenue Service Center, Memphis, Tennessee. (See Claim for Refund attached to the Complaint as Exhibit "H".)

23. On or about November 5, 1979, Joseph and Mary filed with the Internal Revenue Service at Indianapolis, Indiana, Form 3363 "Acceptance of Proposed Disallowance of Claim for Refund or Credit," whereby they accepted the proposal of the Internal Revenue Service to disallow in full their claim for refund. (See Form 3363 attached to the Complaint as Exhibit "I".)

24. On or about November 5, 1979, Joseph and Mary filed with the Internal Revenue Service at Indianapolis, Indiana, Form 2297 "Waiver of Statutory Notification of Claim Disallowance" whereby they waived the requirement under Section 6532(a)(1) of the Code that a notice of claim disallowance be sent to them by certified or registered mail. (See Form 2297 attached to the Complaint as Exhibit "J".)

### CONCLUSIONS OF LAW

1. This Court has jurisdiction of this action under the provisions of 28 U.S.C. § 1346(a)(1).

2. This is an action for refund of income taxes and interest assessed against and collected from plaintiffs for their taxable year of 1973, and arises under 26 U.S.C. § 7422. The conditions and requirements established by law precedent to the institution of this action have been complied with or waived by plaintiffs. The issue before the Court is whether a proper election was made to treat the gain from the sale of certain Cable T.V. stock as a nontaxable involuntary conversion.

Regulation 1.1033(a)–2(c)(2) provides in part "that all the details in connection with an involuntary conversion relating to the replacement of the converted property, or a decision not to replace, or the expiration of the period for replacement *must be reported in the return filed for the taxable year in which any such gain is realized.*" (Court's emphasis)

The details relating to the replacement of the converted property were not known on April 15, 1974 at the time of filing the return since the Internal Revenue Service did not issue its ruling until March 28, 1974, the F.C.C. did not issue its certificate until May 31, 1974 and the property was not replaced until July 31, 1974.

3. 26 U.S.C. § 1071 provides that if the F.C.C. certifies that the sale or exchange of a taxpayer's stock of a corporation which operates a cable television system is necessary or appropriate to effectuate a change in the policy of, or the adoption of a new policy by such Commission with respect to the ownership and control of a cable television system and a television broadcast system, the taxpayer may elect to treat such sale or exchange as an involuntary conversion of such property within the meaning of 26 U.S.C. § 1033 by making a statement to that effect on his return for the taxable year in which the sale or exchange occurs.

4. The position of the Internal Revenue Service in this case is a hypertechnical one. The Internal Revenue Service contends the election in this case was not effective since it was not made in the first return.

Neither Code section 1071 nor Internal Revenue Service regulation 26 CFR § 1.1071–4(a) makes reference to an "original" or "timely" return. If the regulation had been explicit, plaintiff would have likely included a statement about the election in the first return.

The Internal Revenue Service had actual notice of Joseph and Mary's position on the matter with their December 4, 1973 request for a ruling.[1] Had a copy of the "request for ruling" been attached to the return it would, more than likely have been recognized by the Internal Revenue Service as an election. Therefore, the Internal Revenue Service is relying on form rather than substance, which this Court considers as not being proper in this case. The issue before the Internal Revenue Service upon the request was whether the property to be acquired met the "similar property" definition of Code Section 1033 and that any gain be deferred. The Internal Revenue Service issued its ruling on March 28, 1974. Thereafter, on April 29, 1974 the F.C.C. tax certificate petition was filed. On May 31, 1974 the certificate was issued. The proceeds from the sale were reinvested on July 31, 1974.

Obtaining the Internal Revenue Service ruling and F.C.C. certificate is a time consuming and complex process. The taxpayer is in a difficult position, at best. There is no requirement that the election be made on a prescribed form. There is no regulation referring to a "timely" filing. Although leaving his options open, taxpayer replaced the property within two months after obtaining the F.C.C. certificate. Pursuant to the Internal Revenue Service regulation, Joseph and Mary made an election[2] binding for taxable year 1973, and subsequent taxable years under section 1071, through filing the election with their amended tax return for 1973 (the taxable year in which the sale or exchange occurs) 26 CFR § 1.1071–4(a). This was done on January 13, 1975. The government ought not gain from the complexity of its own process to require the election under section 1071 "in the form of a written statement" and "filed in duplicate" in only the first tax return, where neither statute nor regulation explicitly require.

The statement of this election pursuant to section 1071 may be made on an amended income tax return provided it is filed within the period of the statute of limitations for the assessment and collection of income taxes for the year in which such sale or exchange occurs. Joseph's and Mary's amended income tax return for taxable year 1973 was filed within this period of the statute of limitations.

The government's contention is that a taxpayer not making an affirmative election and leaving his options open will take advantage of the statute of limitations, therefore the transaction should be nullified because of the potential advantages of hindsight. This is simply not the case before the Court. 26 U.S.C. § 1311 and corresponding Code of Federal Regulation Sections probably prevent this occurrence in most contexts.

5. The income tax assessment issued and collected after the November 8, 1976 Notice of Deficiency, against Joseph and Mary for capital gains realized by Joseph from the sale of his Indiana Cable stock and interest on such tax was erroneous and illegal.

Joseph and Mary are entitled to collect from the defendant, United States of America, the amount of One Hundred Ninety-Five Thousand Six Hundred Fifty-Three Dollars and Twenty-nine Cents ($195,653.29), plus interest as provided by law.

6. The Court includes in its Conclusions of Law any Findings of Fact listed above as Conclusions of Law and vice-versa.

IT IS SO ORDERED.

---

1. For instance, IRS computer cross-reference between departments.

2. In Joseph's and Mary's amended return for the taxable year in which such sale occurred and which was the subject of the December 4, 1973 request for IRS ruling, Joseph stated and elected to treat his sale of shares of Indiana Cable stock as an involuntary conversion within the meaning of 26 U.S.C. § 1033.